**In re EXACT TEMP, INC., Debtor.**

**Karen E. Bezner, Trustee, Plaintiff,**

v.

**East Jersey State Prison, Tenant Contractors, Inc., And Habcore, Inc., Defendants.**

**Bankruptcy No. 96–36586.**
**Adversary No. 97–3008.**

United States Bankruptcy Court,
D. New Jersey.

March 25, 1999.

Karen E. Bezner, Scotch Plains, NJ, for Karen E. Bezner, Plaintiff/Trustee.

Andrew R. Sapolnick, Deputy Attorney General, Trenton, NJ, for East Jersey State Prison, Defendant.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This matter is before the court on East Jersey State Prison's ("EJSP") motion to vacate the judgment by default and to dismiss the complaint and the plaintiff's cross-motion for inventory and turnover of assets for sale. The issue presented is whether the filing of a proof of claim by one state agency waives the Eleventh Amendment immunity of another state agency pursuant to section 106(b) of the Bankruptcy Code with respect to an unrelated claim by the estate against the non-filing agency. The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C), (E) and (O).

## FINDINGS OF FACT

On January 7, 1997, the trustee instituted this adversary proceeding against the three named defendants. In the complaint, the trustee sought more than $35,000. from EJSP for services rendered prepetition in connection with the repair and/ or installation of the facility's refrigeration system. EJSP failed to respond to the complaint. The trustee submitted purchase orders and field service reports in connection with its request for entry of default and default judgment showing an outstanding balance from EJSP of $35,707.22. This court entered a judgment by default in the amount of $35,707.22 on August 5, 1997. Subsequently, the trustee voluntarily dismissed the adversary proceeding against the two remaining defendants. The trustee obtained a writ of execution and levied on EJSP's personal property on May 27, 1998. EJSP then filed a motion on October 9, 1998 to vacate the judgment by default and the writ of execution.[1] The trustee opposed EJSP's motion and cross-moved for an inventory and a turnover of assets to the estate for sale.

### 1. EJSP's Position

EJSP argues that the Eleventh Amendment immunity to which it is entitled as a state agency has not been waived by the filing of proofs of claims by other state agencies. Noting that sovereign immunity was not waived nor was it abrogated by Congress pursuant to section 5 of the Fourteenth Amendment, EJSP argues that it is immune from suit in federal court. Moreover, the filing of a proof of claim by a state agency, EJSP contends, does not thereby waive sovereign immunity with respect to every branch of state government. The Department of Labor for the State of New Jersey ("DOL") filed a proof of claim on November 8, 1993 in the amount of $3,850.19 for unreimbursed unemployment compensation and disability benefits for the second and third quarters of 1993. Similarly, the Division of Taxation for the State of New Jersey ("DOT") filed a proof of claim on October 15, 1993 in the amount of $16,398.84 for underpayments and sales and use taxes owed for the years 1992 and 1993. Nonetheless, EJSP argues that such filing by separate, discrete agencies does not constitute a waiver of EJSP's immunity under section 106 of the Code. Relying on the statutory language in section 106, EJSP states that filing a claim only operates as a waiver for

---

1. EJSP noted in its brief that its appearance in the instant matter is made for the limited purpose of contesting jurisdiction and must not be construed as a waiver of its Eleventh Amendment immunity. Therefore, the court limits its decision to the jurisdictional issue and will not address the merits of any substantive grounds for vacating the default judgment order.

the governmental unit which filed the claim. Furthermore, EJSP notes that, for filing to constitute waiver of immunity, the claim against the governmental unit must arise from the same transaction and occurrence out of which the proof of claim arose. Although EJSP acknowledges that the Code fails to identify whether the term "governmental unit" may encompass more than one state agency, EJSP argues that, where there is uncertainty or ambiguity regarding waiver, sovereign immunity must not be waived. Finally, EJSP states that the relationship among the three state agencies is too tenuous to satisfy the "same transaction or occurrence" test and thus, it argues that the default judgment must be vacated and the adversary proceeding dismissed.

## 2. Trustee's Position

The trustee concedes that EJSP is a state agency which, absent waiver, is otherwise entitled to Eleventh Amendment protection. Since the DOT's claim asserted that taxes are due and owing for work performed by the debtor during the same period the debtor rendered the services to EJSP which serve as the basis for the judgment, the trustee reasons that a portion of the taxes are directly attributable to the accounts receivable due from EJSP. Accordingly, the trustee argues that the acts of filing by the DOT and the DOL effectively waived EJSP's sovereign immunity.

## CONCLUSIONS OF LAW

Under the Eleventh Amendment to the United States Constitution, states are protected by sovereign immunity and thus may not be sued by an individual in federal court.[2] Eleventh Amendment protection, however, is not absolute. Courts recognize two exceptions to states' Eleventh Amendment protection: waiver and abrogation. States may waive their immunity or Congress, acting pursuant to a valid exercise of power, may abrogate state sovereign immunity by unequivocally expressing such intent. *United States v. Nordic Village*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)(holding that waivers of governmental immunity must be strictly construed and unequivocally expressed).

## 1. Abrogation of Sovereign Immunity

Under the Bankruptcy Reform Act of 1994 (the "Reform Act"), Congress significantly amended section 106 of the Code.[3] Section 106(a) under the Reform Act was adapted in part from former section 106(c). However, its current content has been the subject of considerable constitutional scrutiny. Acting pursuant to the Bankruptcy Clause of Article I, Congress provided for abrogation of sovereign immunity under sixty separate Code sections. Although the Supreme Court has not specifically addressed the constitutionality of section 106(a) and Congress' authority to abrogate sovereign immunity pursuant to the Bankruptcy Clause, the Court explored the scope of Congress' power to abrogate sovereign immunity under the Commerce Clause of Article I as well as the Indian Commerce Clause. *See Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

Prior to its decision in *Seminole Tribe*, the Supreme Court allowed Congressional abrogation of state sovereign immunity pursuant to the Commerce Clause of Article I. *Union Gas Co.*, 491 U.S. at 14, 109 S.Ct. 2273. The Court overturned its *Union Gas Co.* decision in *Seminole*, however, holding that the only valid source of power through which Con-

---

**2.** The Eleventh Amendment to the United States Constitution states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

**3.** Section 106(b) of the Reform Act was adapted from former section 106(a). Similarly, current section 106(c) was adapted from former section 106(b). The statutory sections were subject to little modification under the Reform Act. In their current form, sections 106(b) and (c) authorize suits against a governmental unit for compulsory and permissive counterclaims respectively. *Nordic Village*, 503 U.S. at 34, 112 S.Ct. 1011; *Price v. United States (In re Price)*, 42 F.3d 1068, 1070 (7th Cir.1994).

gress may abrogate state sovereign immunity is section 5 of the Fourteenth Amendment. In light of the *Seminole* court denying Congress the authority to abrogate states' sovereign immunity pursuant to Article I of the Constitution, the majority of courts that have addressed Congress' abrogation of sovereign immunity pursuant to the Bankruptcy Clause have found section 106(a) unconstitutional. *See Sacred Heart Hospital of Norristown v. Commonwealth of Pennsylvania Dept. of Public Welfare (In re Sacred Heart Hospital of Norristown )*, 133 F.3d 237 (3d Cir.1998); *Koehler v. Iowa College Student Aid Commission (In re Koehler )*, 204 B.R. 210, 215–16 n. 8 (Bankr.D.Minn.1997)(listing cases).

## 2. Waiver of Sovereign Immunity

■ The impact of the *Seminole* decision on Code section 106(b) is less clear. Unlike section 106(a), which identifies the Code sections pursuant to which sovereign immunity is abrogated, section 106(b) does not explicitly abrogate sovereign immunity. Section 106(b) deems sovereign immunity to be waived under a narrow set of circumstances. *In re Sacred Heart Hospital of Norristown,* 204 B.R. 132, 136 (E.D.Pa.1997); *aff'd* 133 F.3d 237 (3d Cir.1998). *But see, In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140, 1147 (4th Cir.1997)(holding that although a waiver is deemed to occur upon filing a proof of claim under current section 106(b), the subsection is essentially an abrogation statute). It states in relevant part:

> A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b). Current section 106(b) formerly appeared as section 106(a) prior to the Reform Act. Under the former version, however, the phrase "that has filed a proof of claim in the case" was not included. The Official Comments to section 106(b) of the Reform Act confirm that this qualifying phrase was added to clarify that the act of filing a proof of claim triggered waiver of sovereign immunity. 140 CONG. REC. H10766 (daily ed. Oct. 4, 1994). Prior to the statutory amendment, a minority of courts held that filing a proof of claim was not required for immunity to be waived, *See, Sullivan v. Town & Country Home Nursing Services, Inc. (In re Town & Country Home Nursing Services, Inc.),* 963 F.2d 1146 (9th Cir.1991); *Official Comm. Of Unsecured Creditors of Operation Open City, Inc. v. New York St. Dept. of St. (In re Operation Open City, Inc.),* 170 B.R. 818 (S.D.N.Y.1994). However, the Official Comments remedy any uncertainty on that point by stating, "Section 106(b) is clarified by allowing a compulsory counterclaim to be asserted against a governmental unit only where such unit has actually filed a proof of claim in the bankruptcy case. This has the effect of overruling contrary case law, such as *Sullivan v. Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146 (9th Cir.1991) ...." 140 Cong. Rec. H10766 (daily ed. Oct. 4, 1994).

Whether sovereign immunity is deemed to be waived for a particular governmental unit, therefore, turns on whether that governmental unit filed a proof of claim. In the instant case, the trustee seeks to recover a monetary obligation from EJSP. EJSP, however, did not file a proof of claim. The DOT and the DOL each filed a proof of claim. Thus, the trustee's waiver argument is predicated upon loosely defining the term "governmental unit" in section 106(b) as "state" or as "any state agency" and employing the definitions interchangeably, and second upon the trustee's claim arising from the same transaction or occurrence from which either of the filing agencies' proofs of claim arose.

### A. *Sacred Heart*

The *Sacred Heart* case, decided in 1998 by the Third Circuit, is factually similar to the instant case. Sacred Heart, a hospital located in Pennsylvania, filed a petition for relief under chapter 11. The Department of Labor and Industry (the "DLI") and the Department of Revenue (the "DOR"), both agencies of the Commonwealth of Pennsylvania, filed proofs of claim against the bankruptcy estate for unreimbursed unemployment benefits

and for sales and withholding taxes respectively. *Sacred Heart*, 204 B.R. 132, 136 (E.D.Pa.1997); *aff'd* 133 F.3d 237. Sacred Heart commenced an adversary proceeding against the Department of Welfare (the "DPW"), seeking payment for services rendered to patients under Pennsylvania's Medical Assistance Program. 204 B.R. at 136. The DPW moved to dismiss the adversary proceeding, asserting that the Eleventh Amendment barred suit in federal court. *Id.* Overturning the bankruptcy court's decision, the district court focused on the narrow scope of section 106(b). The court stressed that where a litigant files a proof of claim, that party submits to the jurisdiction of the court. *Id.* at 142. However, the filing by one agency does not thereby subject another state agency to the court's jurisdiction: "When DLI and the [DOR] filed their claims against Sacred Heart's estate, those agencies voluntarily submitted themselves to the court's authority to find a waiver and subjected themselves to compulsory counterclaims by Sacred Heart. The bankruptcy court has no authority to find another waiver of sovereign immunity completely outside of § 106(b)." *Id. Cf., Storey v. City of Toledo (In re Cook United, Inc.)*, 117 B.R. 301, 304–06 (Bankr.N.D.Ohio 1990)(holding that the City waives its sovereign immunity with respect to all of its agencies by the filing of a single agency). Consistent with the Supreme Court's strict construction of Eleventh Amendment waiver, the district court narrowly interpreted section 106(b). The district court stressed the necessity of favoring the states where any ambiguity arises regarding the scope of any intended waiver. 204 B.R. at 142. *See also, Nordic Village, Inc.*, 503 U.S. at 33–34, 112 S.Ct. 1011.

The *Sacred Heart* court observed that the bankruptcy court's reliance on *In re St. Joseph's Hospital*, 103 B.R. 643 (Bankr.E.D.Pa. 1989), was misplaced because the *St. Joseph's* court, relying on the Code prior to the 1994 amendments, found unlimited waiver of state sovereign immunity upon a single agency's filing. The bankruptcy court failed to acknowledge the compelling addition of the phrase "that has filed a proof of claim in the case" to modify the term "governmental unit." This addition, as noted in the Official

Comments, narrowed the waiver to only those governmental units which actually filed a proof of claim. The statutory language prior to the Reform Act was susceptible to a much broader construction of waiver than the present Code allows. Thus, reliance on *St. Joseph's* is misplaced. Relying on the limited waiver provided by current Code section 106(b), the district court in *Sacred Heart* concluded that filing by one governmental unit or agency only operated as a waiver of that governmental unit's immunity. 204 B.R. at 135. On appeal to the Third Circuit, the decision of the district court was affirmed. 133 F.3d at 245. The debtor failed, however, to pursue its argument based on Code section 106(b), so the Court of Appeals did not address it. *Id.* at 240 n. 2.

The district court's holding in *Sacred Heart* was also supported by the unrelatedness of the parties' claims. Noting that section 106(b) requires satisfaction of the "same transaction or occurrence" standard, the court applied the compulsory counterclaim standard imposed by Federal Rule of Civil Procedure 13(a) in evaluating whether the debtor's claim was logically related to the claims filed by the DLI and the DOR. 204 B.R. at 141. The court held that the debtor's claim for payment for services rendered was unrelated to the DLI's claim for unreimbursed unemployment benefits and the DOR's claim for employment and sales taxes. *Id.* Therefore, by failing to meet the "same transaction or occurrence" standard, the filing by the DLI and the DOL did not operate as a waiver of the DPW's immunity. *Id.*

In the instant case, EJSP did not file a proof of claim on its own behalf. The DOL and the DOT each filed a proof of claim. However, absent characterizing EJSP as the same governmental unit as the filing agencies by imputing their acts of filing to EJSP and satisfying the "same transaction or occurrence" test, EJSP maintains its Eleventh Amendment protection.

### 3. EJSP is a Separate and Discrete Governmental Unit

The term "governmental unit" is defined in Code section 101:

(27) "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States ..., a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; ...

It is a fundamental principle of statutory construction that, absent any instruction otherwise, the same meaning must be attributed to a term repeatedly employed throughout a statute. Congress failed to indicate that the term "governmental unit" as used in the first clause of section 106(b) was to be interpreted more narrowly or more broadly than the identical term used in the successive clauses. Thus, it is illogical to suggest that the term means "state" in one clause of the subsection but means "agency" in the following clause. The trustee suggests that the court must construe section 106(b) to essentially say, "An 'agency' that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against "the state" that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of 'such agency' arose." The court declines to adopt such a construction. Statutory language should be given its plain meaning where possible, and in light of Code section 101(27) each agency is plainly a separate "governmental unit." Thus, following the district court's analysis and the Third Circuit's affirmance in *Sacred Heart,* the court concludes that immunity is waived only with respect to such agency that files a proof of claim. Consequently, the acts of filing by the DOL and the DOT are not imputed to EJSP.

### 4. "Same Transaction or Occurrence"

■ Moreover, the trustee's argument also fails in the instant case because the debtor's claim arising from services rendered to EJSP is unrelated to the claims of the DOL and the DOT for unemployment compensation and disability benefits and sales and use taxes. The only common thread among these claims is the fact that they all seek payment in part for the period of 1993. Satisfaction of the compulsory counterclaim standard imposed by Federal Rule of Civil Procedure 13(a) requires the debtor to show that a logical relationship exists between its claim and the claims of the filing parties and that the claims arise from the same "aggregate core of facts." *In re University Medical Center,* 973 F.2d 1065, 1086–87 (3d Cir. 1992). No such relationship exists here. The fact that the debtor rendered services to EJSP in the same year for which the DOL and the DOT filed claims for unreimbursed unemployment compensation, disability benefits and sales and use taxes is not by itself sufficient to support the conclusion that the claims of the debtor and of the agencies "arose out of the same transaction or occurrence." Such a liberal construction would violate the Supreme Court's longstanding insistence on strict construction of waiver. Consequently, the acts of filing proofs of claim by the DOT and the DOL did not operate as a waiver of EJSP's immunity and EJSP is not subject to suit in federal court.

### *CONCLUSION*

In light of the foregoing conclusions, the court grants the defendant's motion to vacate the judgment by default and the writ of execution. As such, the court denies the trustee's cross-motion for an inventory and a turnover of assets to the estate for sale. The trustee can pursue EJSP in state court.

EJSP is to file an order within ten days on notice under D.N.J. LBR 9072–1(c).